UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ESTATE OF TIMOTHY A.
LOVERIA by GREGORIO O.
LOVERIA, Administrator,

                              Plaintiff,

               v.                           3:09-CV-1215

PORTADAM, INC., ROBERT GATTA,
and TIMOTHY BREARMAN,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

On October 29, 2009, the Estate of Timothy A. Loveria by Gregorio O. Loveria, Administrator (Plaintiff), commenced a wrongful death action pursuant to NY EPTL §§ 5-4.1 through 5-4.5 and a survival action pursuant to NY EPTL § 11-3.3 alleging that "Portadam, Robert Gatta, and Timothy Brearman, individually and collectively, intentionally failed to take safety precautions required by OSHA and industry standards to protect Loveria and Loveria drowned at [the Portadam Job Site]." See Docket No. 1.  Defendants filed the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56 arguing that the Complaint should be dismissed: (1) for lack of subject matter jurisdiction; (2) due to the workers' compensation bar; and (3) for lack of personal jurisdiction as to Timothy Brearman.

**I.     FACTS**

This case arises out of a workplace accident which resulted in the death of Timothy A. Loveria.  The decedent was working as a commercial diver in the course of his employment with Defendant Portadam, Inc. (Portadam).  The project involved the removal of a temporary dam and the dredging and widening of a channel.  Before the incident occurred, decedent was diving to remove sandbags under the water.  According to the Complaint, "Loveria was submerged under water when a life-threatening condition arose requiring emergency assistance from other Portadam employees at the Job Site."  See Docket No. 1.

At the time of the incident, Defendant Brearman was standing on a float pulling out steel frames from the water.  Decedent informed Brearman that he was running low on air in his tank but that he had enough air in his tank to make it to shore.  Decedent then proceeded to shore and Brearman continued working.  While working, Brearman heard someone yell from the shore that decedent needed help.  Another Portadam diver, Booth, performed a search and rescue for decedent.  Booth found decedent in the water and he was taken on shore where CPR was applied and an ambulance arrived.

The Complaint alleges that "Portadam employees failed to act in the manner required by law and industry standards to the emergency condition involving Loveria, and Loveria drowned as a result thereof."  Specifically, Plaintiff alleges that Defendants violated 29 CFR §§ 1910.410, 1910.420, 1910.421, 1910.422, 1910.423, 1910.424, 1910.430, 1910.605, and 1904.39 of the Occupational Safety and Health Act.  Generally, these sections require: (1) certain qualifications for every member of the dive team; (2) procedures to follow before, during and after dives, specifically that a diver be line-tendered from the surface, or accompanied by another diver in the water in continuous visual contact during the

diving operations; (3) certain equipment to be kept at the dive site; and (4) incident reporting procedures. The Complaint goes on to maintain that "the foregoing violations represent a widespread pattern of practice by Portadam, in violation of the OSHA regulations, which violations were a substantial factor in causing the death of Loveria" and that "Portadam knew, or should have known, that its actions in failing to maintain safe work conditions in general, and specifically at the Job Site at issue, in conformity with OSHA laws were substantially certain to result in the death of Loveria."

Following the incident, decedent's mother commenced a workers' compensation claim in New Jersey. On October 29, 2009, Decedent's estate filed the Complaint in the instant action. Defendants filed this motion for summary judgment on March 25, 2010 arguing that the Complaint should be dismissed: (1) for lack of subject matter jurisdiction; (2) due to the workers' compensation bar; and (3) for lack of personal jurisdiction as to Timothy Brearman. Plaintiff opposes the motion arguing that the action for wrongful death falls under the intentional tort exception to the workers' compensation exclusivity bar. Plaintiff concedes that Defendant Gatta is a resident of the State of New York, and, thus, because he is not diverse should be dismissed from the action. Similarly, Plaintiff concedes that the complaint should be dismissed for lack of personal jurisdiction as to Brearman because he is a resident of Pennsylvania and is not subject to long arm jurisdiction in New York.

## II.     STANDARD OF REVIEW

Summary judgment, pursuant to Fed. R. Civ. P. 56(c), is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  Major League Baseball Properties, Inc. v. Salvino, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading ....").  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Ross v. McGinnis, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

### III.     DISCUSSION

In the instant case, Defendants argue that "[s]ummary judgment . . . is warranted because the exception to the New Jersey workers' compensation bar does not apply." See Docket No. 28.  "Pursuant to N.J.S.A. 34:15-8, the Legislature has prescribed that workers compensation is the sole remedy against an employer for a covered employee who is injured on the job, except where the employer's conduct amounts to an intentional wrong." Kibler v. Roxbury Board of Education, 392 N.J. Super. 45, 47 (2007); see Laidlow v. Hariton Machinery Co., 170 N.J. 602, 605-606 (2002) ("an employer who causes the death or injury of an employee by committing an 'intentional wrong' will not be insulated from common-law suit."). In Laidlow, 170 N.J. at 617, the Supreme Court of New Jersey interpreted and articulated the two prong test, promulgated in Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985), which must be met "in order for an employer's act to lose the cloak of immunity" provided by N.J.S.A. 34:15-8:

> (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

Defendants argue that neither prong has been met.

"[W]hen an employee sues an employer for an intentional tort and the employer moves for summary judgment based on the Workers' Compensation bar, the trial court must make two separate inquiries." Laidlow, 170 N.J. at 623.  The first inquiry requires the court to determine, "whether, when viewed in a light most favorable to the employee, the evidence could lead a jury to conclude that the employer acted with knowledge that it was substantially certain that a worker would suffer injury." Id.  If the court finds that a reasonable jury could

so find, "a court must determine whether, if the employee's allegations are proved, they constitute a simple fact of industrial life or are outside the purview of the conditions the Legislature could have intended to immunize under the Workers' Compensation bar." Id.

### a. Whether Portadam knew that its actions were substantially certain to result in injury or death to the employee?

Plaintiff argues that the first prong, or conduct prong, of the test is satisfied because "Portadam knew its actions in not enforcing the OSHA safety regulations at the [Job Site] were substantially certain to result in the death of Timothy Loveria." Defendants maintain, however, that "none of the claims that plaintiff asserts regarding failure to comply with certain safety regulations rise to the level of actual knowledge that Portadam's alleged intentional actions would result in death to decedent."

To overcome the exclusivity bar the employee does not have to prove "that the employer subjectively desired to harm him." Laidlow, 170 N.J. at 613-614. Rather, if "the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead he is treated by the law as if he had in fact desired to produce the result." Id. at 613. However,

> the mere knowledge and appreciation of a risk - something short of substantial certainty - is not intent. The defendant who acts in belief of consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.

Crippen v. Central Jersey Concrete Pipe Company, 176 N.J. 397, 406 (2003) (quoting Millison, 101 N.J. at 177).

Courts look to the totality of the circumstances and the evidence as a whole before making the decision as to whether a reasonable jury could conclude that the employer was

substantially certain that a worker would suffer injury. In Laidlow, 170 N.J. at 622, the court specifically noted that "our holding is not to be understood as establishing a per se rule that an employer's conduct equates with an 'intentional wrong' within the meaning of N.J.S.A 45:15-8 whenever that employer . . . commits some . . . OSHA violation." Rather, the court made clear that the determination is "grounded in the totality of the facts contained in the records." Id. Such factors that have been considered by courts in making this determination include: (1) whether the employer was aware of any prior injuries or close calls; (2) whether employees had expressed safety concerns; (3) the seriousness of any potential injury that could occur; (4) prior OSHA violations; and (5) whether the employer had deceived OSHA in an attempt to continue violating OSHA regulations. See Millison, 101 N.J. at 179, 182; Laidlow, 170 N.J. at 622; Crippen, 176 N.J. at 409; Mull v. Zeta Consumer Products, 176 NJ 385, 392 (2003).

In Millison, the plaintiffs, employees of du Pont, sued du Pont and its doctors alleging that they "intentionally injured the plaintiffs by deliberately exposing them to asbestos and aggravated these injuries by conspiring to [conceal] and fraudulently concealing from the plaintiffs knowledge of the diseases known by these defendants to have been caused by asbestos exposure and already contracted by the plaintiffs." Crippen, 176 N.J. at 407 (citing Millison, 101 N.J. at 166). The court held that with respect to the defendant employer:

> count one of plaintiff's complaint seeking damages beyond those available through workers compensation for their initial work related occupational diseases must fail. Although defendants' conduct in knowingly exposing plaintiffs to asbestos clearly amounts to deliberately taking risks with employees' health, as we have observed heretofore the mere knowledge and appreciation of a risk - even the strong probability of a risk - will come up short of the 'substantial certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the compensation statute.

Millison, 101 N.J. at 179.

As to the defendant physicians, however, the court held that Plaintiffs had pleaded a valid cause of action for aggravation of their initial occupational diseases under the second count of their complaints. Id at 181-182. In the second count plaintiffs alleged that the du Pont "doctors did not inform plaintiff's of their sickness, and instead told them that their health was fine and sent them back to work under the same hazardous conditions that had caused their initial injuries." Id. The court held that:

> [t]here is a difference between, on the one hand, tolerating in the workplace conditions that will result in a certain number of injuries or illnesses, and, on the other, actively misleading the employees who have already fallen victim to those risks of the workplace.

Id. at 182.

In Laidlow, 170 N.J. at 606, the plaintiff suffered a serious injury when his hand "became caught in a rolling mill he was operating at his place of employment." The plaintiff brought suit claiming "that his employer ha[d] removed a safety device from a dangerous machine, knowing that the removal was substantially certain to result in injury to its workers and in addition, deliberately and systematically deceived safety inspectors into believing that the machine was properly guarded." Id. The court held that:

> [it] was satisfied that a reasonable jury could conclude, in light of all surrounding circumstances, including the prior close-calls, the seriousness of any potential injury that could occur, Laidlow's complaints about the absent guard, and the guilty knowledge of [defendant] as revealed by its deliberate and systematic deception of OSHA, that [defendant] knew that it was substantially certain that the removal of the safety guard would result eventually in injury to one of its employees.

Id. at 622.

In Crippen, 176 N.J. at 399, "the critical issue [was] whether an employer's conduct in failing to cure hazardous conditions in violation of a directive issued by [OSHA], coupled

with its intentional deception of OSHA, constitutes an 'intentional wrong' under the exclusive remedy provision of the Workers' Compensation Act." During discovery it was determined that the "[d]efendant was aware of serious, hazardous, and dangerous conditions in their . . . plant, identified by OSHA," and, that they "deliberately provided information to OSHA indicating that they were addressing each of the violations in an attempt to abate the citations" but "admitted to not following through with the statements made to OSHA regarding the abatements." Id. at 404. The court in this case concluded that "a jury reasonably could conclude that defendant had knowledge that its deliberate failure to cure the OSHA violations would result in a substantial certainty of injury or death to one of its employees." Id. at 409. Integral to that conclusion was the testimony of Charles Mason, the defendant's Environmental Health and Safety Manager at the time of the decedents death, who "admitted . . . that he knew there was a substantial certainty that an employee could die in one of its permit-required confined spaced." Id. at 410. "That admission may be imputed to defendant because Mason, as the environmental health and safety manager at defendant's company, was testifying on defendant's behalf." Id. The court found persuasive the fact that, despite this knowledge, the defendant "deliberately failed to correct the OSHA violations and intentionally deceived OSHA into believing that it had abated the violations because it did not want OSHA to return to the plant." Id. "By its deception, a jury could conclude that [defendant] evidenced an awareness of the virtual certainty of injury from its failure to correct the safety hazards." Id. Additionally, the court found persuasive that the OSHA violations found were categorized as serious which, "under OSHA's regulations, . . . translates into conditions that create a substantial probability of death or serious injury." Id.

In Mull, 176 NJ at 392, the court also denied summary judgement, finding Plaintiff's allegations, "that her employer disengaged the winder's critical safety devices, knowing of the dangerous consequences of such conduct," coupled with the employer's knowledge of a prior accident, safety concerns, and OSHA's previous citations, were enough that, if proved, "could result in a reasonable jury finding that defendant's conduct created 'substantial certainty' of injury." In this case, the court found that deception of OSHA was not a requirement for finding intent. Mull, 176 N.J. at 392 ("Although the employer's purported deception in Laidlow was a prominent factor in our analysis, we emphasized in that case that no one fact compelled our holding. In that respect, we stated as guidance to future courts and litigants that 'our disposition in such a case . . . will be grounded in the totality of the facts contained in the record.").

In the instant case, the only evidence proffered by Plaintiff as proof that Portadam was substantially certain that its actions would cause serious injury or death is the fact that, at the time of the accident, Defendant was alleged to be in violation of a number of OSHA regulations. Plaintiff attaches the affidavit of an expert, Michael Pitely, to establish that OSHA regulations had been "subverted or unenforced by Portadam at the job site." Pitely opines that the OSHA safety regulations were directly related to the manner in which Loveria died. Plaintiff also attaches the affidavit of Gregorio Loveria which states that he searched the OSHA website and "found that just a few years prior to my brother Tim Loveria's death on October 30, 2007, Portadam had been previously cited and fined on earlier and separate OSHA inspections, for a number of diving safety violations." The affidavit goes on to state that "[s]everal of these diving safety violations for which Portadam was previously cited by OSHA, and in some instances fined, are apparently some of the very the same [sic] diver

safety violations which OSHA . . . stated were substantiated as having occurred at the Portadam job site where my brother Tim died needlessly." These statements are not supported by any documentation nor do they set forth any facts or circumstances surrounding the violations. Significantly, Plaintiff has not attached any affidavit or statement by OSHA stating that these violations existed or why an investigation of decedent's death did not occur.

  Here, unlike in Crippen, there is no evidence that OSHA cited Portadam for violations or that Portadam had failed to abate previous violations at this job site. Portadam maintains that "from October 2004 through October 30, 2007, Portadam was never cited by OSHA for a safety violation or any other violation," and following the accident, "Portadam was not cited by OSHA for violating any safety regulation for the Panguitch Lake, Utah, project that decedent was involved in." Affidavit of Robert Gatta, Chief Executive Officer of Portadam. Similarly, unlike in Crippen and Laidlow, there is no evidence that Portadam attempted to deceive OSHA in any way. There also is no evidence that any of Portadam's employees had suffered any previous similar accident or near accidents or that any employees had expressed any safety concerns. Plaintiff presents no other evidence to support a finding that Portadam was aware of the possibility that an injury could occur. The Court holds that a reasonable jury could not find Portadam's actions to rise to the level of an intentional wrong because the existence of possible OSHA infractions alone do not rise to the level of substantially certain to cause injury or death.

### b. Whether the death of Loveria was more than a fact of life of industrial employment

Although the Court has already determined that the first prong has not been met, the Court also finds that the allegations fail to meet the second prong. "Resolving whether the [second] prong of Millison is met is solely a judicial function." Laidlow, 173 N.J. at 622.

Plaintiff alleges that the second prong, the context prong, is met because "the absence of the employer abiding by [OSHA] regulations, or even subverting the regulations" which cause the death of an employee is not a simple fact of industrial life. Defendants contend that "Decedent's death was an unfortunate accident and not the result of any intentional conduct on the part of any Portadam employee." See Docket No. 17. They maintain that the activity decedent was engaged in at the time of his death, going to shore to obtain a new air tank, is a simple fact of industrial life and "no reason existed to believe these actions would result in death." Id.

In Laidlow, 173 N.J. at 624, the court held that if the first prong is answered affirmatively, "the trial court must then determine whether, if the employee's allegations are proved, they constitute a simple fact of industrial life or are outside of the purview of the conditions the Legislature could have intended to immunize under the Workers' Compensation bar." The second prong "require[s] courts to assess not only whether the employee acted with knowledge that injury was substantially certain to occur, but also whether the injury and the circumstances surrounding it were part and parcel of everyday industrial life or plainly outside the legislative grant of immunity." Id. at 614.

In Laidlow, 173 N.J. at 622, the court concluded the second prong was met reasoning that "if an employee is injured when an employer deliberately removes a safety

device from a dangerous machine to enhance profit or production, with substantial certainty that it will result in death or injury to a worker, and also deliberately and systematically deceives OSHA into believing that the machine is guarded, we are convinced that the Legislature would never consider such actions or injuries to constitute simple facts of industrial life." In Millison, the second prong was met as to the doctors because "fraudulent concealment of the workers' diseases was not a fact of industrial life and not meant by the Legislature to be immunized from suit." Id. at 616-617. In Crippen, 176 N.J. at 411, the second prong was met because:

> Defendant, contrary to OSHA's order, maintained the safety hazards that ultimately caused Crippen's death, and deliberately deceived OSHA into believing that the violations had been corrected. Defendant effectively precluded OSHA from carrying out its mandate to protect the life and health of defendant's workers. We are persuaded that the Legislature never intended such conduct to constitute a part of everyday industrial life and would not expect it to fall within the Workers' Compensation bar.

Finally, in Mull, 176 N.J. 392-393, the second prong was satisfied because, "the Legislature would not have considered the removal of the winder's safety devices, coupled with the employer's alleged knowledge of the machine's dangerous condition due to prior accidents and employee complaints, in addition to OSHA's prior violation notices, to constitute simple facts of industrial life."

      In the instant case, even assuming that Portadam was in violation of certain OSHA regulations at the time of decedent's death, the evidence does not support a conclusion that the circumstances surrounding the death of decent were outside of the purview of the conditions the Legislature could have intended to immunize under the Workers' Compensation bar. As stated earlier, the evidence does not lead to the conclusion that Portadam acted in spite of a substantial certainty that its actions would cause death or injury.

Plaintiff does not provide evidence that Portadam purposefully ignored mandates from OSHA to change its behavior or that Portadam deceived OSHA in any way. The bad faith involved in the cases in which the second prong was met are simply not present in this case. In this case, decedent unfortunately drowned when safety divers were unable to locate him in a timely fashion. Plaintiff's allegations that this resulted from the violation of the OSHA regulation requiring the diver to be watched at all times is the type of unfortunate accident which the New Jersey Legislature intended to be covered by workers' compensation. Therefore, the Court finds that the second prong has not been satisfied.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 is GRANTED. The case is DISMISSED in its entirety.

IT IS SO ORDERED

Dated:May 25, 2010

_____
Thomas J. McAvoy
Senior, U.S. District Judge